UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Candy Argot, | ) C/A No. 4:11-2755-MBS-TER |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) REPORT AND |
| Dr. Oliver Harden; Dana Smith; Columbia Regional Care Center, a prison hospital owned by Geo Care, Inc.; Chief Bruce McClease; Steve Adwell; Major Cummings; Captain Alton Richardson; Officer Peterson; Ofc. Whitaker; Erica Brown, Nurse; Sgt. Carlos Glenn; Ofc. Whitman; Ofc. Adam Creewell; Catherine Adumoah, Nurse; Ofc. Rosin; Nurse Mills; Rochelle Priester, Nurse; Joy NLN, Nurse; Tangela NLN, Nurse; Leroy NLN, Nurse; Kya Davis, Nurse, | ) RECOMMENDATION |
| | ) |
| Defendants. | ) |

## I. PROCEDURAL BACKGROUND

The Plaintiff, Candy Argot, proceeding *pro se*, filed this action under 42 U.S.C. § 1983[1] on October 12, 2011. Plaintiff is a prisoner in the custody of the Georgia Department of Corrections and housed at the Columbia Regional Care Center in Columbia, South Carolina. Defendants filed a motion for summary judgment on June 26, 2012.[2] (Doc. #79). Because Plaintiff is proceeding *pro se*, she was advised on or about July 16, 2012, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

[2] Defendants Joy, Leroy, Rosin, Mills, Priester, and Tangela were dismissed pursuant to court order on January 10, 2013. (Doc. #100).

Cir. 1975), that a failure to respond to the Defendants' motion for summary judgment could result in dismissal of her complaint. The Plaintiff filed a response in opposition on September 27, 2012. (Doc.#91).

## II.  DISCUSSION

### A.  STANDARD FOR SUMMARY JUDGMENT

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972).  The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).

The moving party bears the burden of showing that summary judgment is proper.  Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof.  Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).  The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the

fact finder could reasonably find for it. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. <u>Shealy v. Winston</u>, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. <u>Barber v. Hosp. Corp. of Am.</u>, 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." <u>Mitchell v. Data General Corp.</u>, 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. <u>See</u> <u>Celotex</u>, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with . . . affidavits, if any." <u>Id.</u> at 322; <u>see also</u> <u>Cray Communications, Inc. v. Novatel Computer Systems, Inc.</u>, 33 F.3d 390 (4th Cir. 1994); <u>Orsi v. Kickwood</u>, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

### B. ARGUMENT OF PARTIES/ANALYSIS

Plaintiff alleges a violation of her constitutional rights based on deliberate indifference to her safety from attack by other patients, being forcibly medicated with insulin, and deliberate indifference to a serious medical condition concerning an infected finger. Plaintiff asserts that she has been improperly housed with violent psychiatric patients during her time at Columbia Regional Care Center (CRCC). Plaintiff contends that she asked to be moved to the medical unit but her request was denied.

Defendants argue they are entitled to summary judgment based on Plaintiff's failure to state

a claim, supervisors cannot be held liable under a respondeat superior theory, Defendants did not act under color of state law as they were employees of GEO, Group, Inc., Defendants are entitled to qualified immunity, Plaintiff has failed to show that Defendants acted with deliberate indifference to her serious medical needs, and that Plaintiff has failed to comply with the statutory requirements for filing a medical malpractice action. Defendants submitted several affidavits in support of their motion for summary judgment.

Defendants submitted the affidavit of Steven T. Adwell (Adwell) who attests that he is the Facility Administrator of the Columbia Regional Care Center (CRCC) which is a private healthcare detention facility operated by GEO Care of South Carolina (GEO). (Adwell affidavit). As the Facility Administrator, Adwell is responsible for the overall operation of the facility. Id. GEO contracts to provide detention healthcare, nursing care, some physician care, and security services at CRCC for numerous government agencies including the Georgia Department of Corrections. Id. Plaintiff is detained at CRCC pursuant to GEO's contract with the Georgia Department of Corrections. Id. GEO is not a governmental agency and neither the State of South Carolina, the State of Georgia, nor the Georgia Department of Corrections participates in the management of CRCC or the actions of facility employees. Id. CRCC was privately managed and operated by GEO at all times relevant to the allegations in the complaint. Id. Adwell reviewed the complaint and Plaintiff's CRCC records and is familiar with Plaintiff through his role as Facility Administrator and in a supervisory role during her detention at CRCC. Id. Plaintiff is serving a prison sentence with the Georgia Department of Corrections and was transferred to CRCC because of noncompliance with her medication regimen which led to multiple episodes of diabetic comas and acute medical care at a local hospital in Georgia. Id. Plaintiff is currently housed on Unit 7 at CRCC which is the medical unit. Prior to being housed on Unit 7, Plaintiff was housed on Unit 3 which is CRCC's psychiatric/special management unit due to her suicide risk and carried psychiatric diagnoses. Id.

During her time on Unit 3, Plaintiff frequently agitated other residents in an attempt to get them to act out. Id. Plaintiff has been housed on appropriate units at all times during her detention at CRCC. Id.

As the CRCC's administrator, Adwell attests that he relies on director Dr. Oliver Harden and his medical staff for the medical care and treatment of detainees at CRCC, including Plaintiff. Id. Adwell has no role in assessing the medical needs of patients at CRCC or providing medical care and treatment to them. Id. Defendants Harden, Smith, McClease, Adwell, Cummings, Richardson, Peterson, Whitaker, Brown, Glenn, Whitman, Creewell, Adumoah, Rosin, Mills, Priester, Tangela, Davis were employees of GEO Group at all times relevant to the allegations in the Complaint. Adwell attests that neither he nor any other facility employee has taken any actions at any time to cause harm to Plaintiff and have acted in good faith towards her at all times during her detention at CRCC.

Defendants submitted the affidavit of Dr. Oliver P. Harden (Harden) who attests that he is board certified in internal medicine and is the medical director at the CRCC overseeing the medical staff and medical care provided to the patients. (Harden affidavit). Harden provides direct care to the patients at CRCC and is familiar with Plaintiff through his role as medical director at CRCC. Id. Plaintiff is an insulin dependent diabetic and was transferred to CRCC from the Georgia Department of Corrections due to noncompliance with her medications regime which led to multiple episodes of diabetic comas and acute medical care at a local hospital in Georgia. Id. Plaintiff remained noncompliant with her medication regime at CRCC and suffers from bipolar disorder with depression. Id. Plaintiff is currently housed on Unit 7 at CRCC which is the medical unit but was previously housed on Unit 3, the psychiatric/special management unit. Plaintiff was housed on Unit 3 because she was a suicide risk and carried psychiatric diagnosis. Id. While on Unit 3, Plaintiff frequently agitated other residents in an attempt to get them to act out. Id. Plaintiff has been housed

5

on appropriate units at all times during her detention at CRCC from a medical standpoint. Id. Plaintiff is an insulin dependent diabetic and her blood sugar levels must be managed. Id. After reviewing Plaintiff's CRCC records, Harden attests that it is his opinion, to a reasonable degree of medical certainty, that Plaintiff was provided with necessary insulin in response to her fluctuating blood sugar levels and would have died on several occasions or gone into a coma if insulin had not been administered in a timely manner by the CRCC staff. Id. Harden further states that it is also his opinion, to a reasonable degree of medical certainty, that the medical care and treatment provided to the Plaintiff at CRCC for her infected finger was appropriate and in compliance with the standard of care. Id. Plaintiff has been provided with excellent medical care and treatment during her detention at CRCC. Id. Hardin attests that neither he nor any of the other medical and nursing personnel identified as defendants or otherwise in the complaint have been deliberately indifferent to Plaintiff's medical needs. Id.

Defendants submitted the affidavit of Bruce McClease (McClease) who attests that he is an employee with GEO Care of South Carolina and is the Chief of Security at the CRCC where Plaintiff is detained. (McClease affidavit). McClease is familiar with Plaintiff through his position as Chief of Security at CRCC. Id. McClease's job is to supervise and manage all security functions at CRCC and he is not responsible for and has no role in the provision of medical care and treatment to individuals detained at CRCC. Plaintiff was housed on Unit 3 due to her being a suicide risk and carried psychiatric diagnoses. Plaintiff agitated the other residents in an attempt to get them to act out. Id.  The security services provided at CRCC are very good and there has been no exception where Plaintiff is concerned. Id. "Neither I nor any of the other security personnel identified as defendants or otherwise in the complaint have taken any actions at any time to cause any harm to Plaintiff consistent with the allegations in the Complaint." Id.

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the

Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173, (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does

not violate the Eighth Amendment." Id. at 851.  Unless medical needs were serious or life threatening, and the Defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail.  Estelle, supra; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra.  Negligence, in general, is not actionable under 42 U.S.C. § 1983.  See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying Daniels vs. Williams and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct."). Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law.  DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03 (1989).  Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") See also Brooks v. Celeste, F. 3d 125 (6th Cir. 1994) (Although several courts prior to the Supreme Court's decision in Farmer v. Brennan, supra, held that "repeated acts of negligence could by themselves constitute deliberate indifference, Farmer teaches otherwise."); Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); White v. Napoleon, 897 F.2d 103, 108-109 (3rd Cir. 1990); and Smart v. Villar, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal).

As held in Estelle, 429 U.S. at 107, a complaint that a physician has been negligent in

diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Even if Plaintiff's allegations are true, she has shown nothing more than a disagreement with the medical treatment provided, not that she was completely denied medical treatment. Additionally, Plaintiff has failed to show that she had a serious medical need of which Defendant knew about and consciously ignored. Plaintiff has not shown that any conduct by the Defendant "shocks the conscious" as required by Miltier v. Beorn, supra. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice" Jackson v. Fair, supra. The type and amount of medical care is left to the discretion of prison officials as long as medical care is provided. Brown v. Thompson, supra. Any disagreement between an inmate and medical personnel generally fails to state a claim. Although there is nothing to indicate that there were mistakes of medical judgment, even if shown, mistakes of medical judgement are not subject to judicial review in a § 1983 action. Russell v.Sheffer, supra.

Moreover, as to any allegations of medical indifference as to Defendants who are non-medical personnel, the claims fail. The Fourth Circuit has held that to bring a claim alleging the denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier v. Beorn, 896 F.2d 848 (4th Cir.1990). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. Id. Under these principles, the Plaintiff has not alleged sufficient facts stating any claim actionable under § 1983 regarding her medical treatment against non-medical personnel.

Based on the evidence presented, there has been no deliberate indifference shown to the overall medical needs of the Plaintiff.[3] For the above stated reasons, summary judgment should be granted in favor of Defendants on this issue.

Forced medication

Plaintiff also has asserted that she was forcibly medicated on April 8, 2010, and December 26, 2010, when the nurse had officers hold Plaintiff down to give Plaintiff her insulin which she had refused to take. As to the alleged incident on April 8, 2010, Plaintiff states "the nurse" came into her room and had "seven officers (one of which is Rosin) hold me down and forced me to take the regular insulin, even though I repeatedly said that I didn't want it." (Complaint, p. 6). Other than officer Rosin, Plaintiff does not name any specific nurse or officer with regard to the alleged incident of April 8, 2010. As to the incident on December, 26, 2010, Plaintiff asserts that "the Charge nurse (Catherine)" and Ofcs. Whitman and Creewell participated along with "the nurse" in forcibly giving Plaintiff her insulin. Id.

An involuntarily confined patient in a state mental health facility has a due process right to be free from unreasonable restraint and the right to be housed in safe conditions, but such rights are tempered by the treatment concerns of mental health professionals. See Youngberg v. Romeo, 457 U.S. 307, 322–23, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). An inmate has a "significant liberty

---

[3] If Plaintiff is attempting to hold any of the Defendants liable for the actions of their employees, the claim fails. Under the doctrine of respondeat superior, an employer or supervisor is not liable for the acts of their employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978) and Fisher v. Washington Metro Area Transit Authority, 690 F. 2d 1133, 1142-43 (4th Cir. 1982).

interest in avoiding the unwanted administration of antipsychotic drugs." Washington v. Harper, 494 U.S. 210, 221–22, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990) (finding state law authorizing involuntary treatment of inmate constitutionally permissible); see also Sell v. United States, 539 U.S. 166, 177, 123 S.Ct. 2174, 156 L.Ed.2d 197 (2003) (extending Harper to persons confined because they are incompetent to stand trial and permitting forced medication in order to render a defendant competent to stand trial).

In U.S. v. Evans, 404 F.3d 227 n.3 (4th Cir. 2005), the Fourth Circuit held:

> The Supreme Court has outlined different tests for when the government may involuntarily medicate an individual, depending on whether the medication is for purposes of prison control or prisoner health on the one hand, see Washington v. Harper, 494 U.S. 494 U.S. 210, 227, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990) (holding that involuntary medication of an inmate with a serious mental illness is constitutionally appropriate where the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest), or, on the other hand, for the purpose of prosecuting an incompetent defendant, see Sell v. United States, 539 U.S. 166, 123 S.Ct. 2174, 156 L.Ed.2d 197 (2003) ( Sell ). In Sell the Supreme Court admonished that [a] court need not consider whether to allow forced medication for [the purpose of rendering the defendant competent to stand trial], if forced medication is warranted for a different purpose, such as the purposes set out in Harper related to the [imprisoned] individual's dangerousness, or purposes related to the [imprisoned] individual's own interests where refusal to take drugs puts his health gravely at risk.

Id.

In this case, Plaintiff was transferred to CRCC from the Georgia Department of Corrections because of noncompliance with her medication regimen, which led to multiple episodes of diabetic comas and acute medical care at a local hospital in Georgia. (Affidavits of Adwell and Dr. Harper). Plaintiff suffers from bipolar disorder and is an insulin dependent diabetic requiring that her blood sugar levels be managed. (Affidavit of Dr. Harper). Plaintiff remained noncompliant with her

medication regimen at CRCC. Id. Dr. Harper avers that it is his opinion to a reasonable degree of medical certainty that Plaintiff was provided with necessary insulin in response to her fluctuating blood sugar levels. Id. On several occasions, Dr. Harper attests that Plaintiff would have died or gone into a coma if insulin had not been administered in a timely manner by CRCC staff. Id.

Based on the evidence before this court, the involuntary administering of Plaintiff's insulin treatment was deemed to be in her medical best interest, and her due process rights were not violated. Therefore, it is recommended that summary judgment be granted in favor of the Defendants with regard to this allegation.

Medical malpractice

Additionally, Defendants argue that Plaintiff's medical malpractice allegations that she was inappropriately housed, inappropriately medicated and medicated against her will for fluctuating blood sugar levels, and substandard care and treatment for an infected finger should be dismissed for failure to comply with the statutory requirements for filing such an action and failure to produce expert testimony. Medical malpractice claims are not actionable under §1983. Furthermore, Plaintiff has not complied with the requirements of S.C. Code Ann. 15-79-110 and 15-36-100 for filing medical malpractice claims. Plaintiff did not file a notice of intent to file suit and did not file an affidavit of an expert witness prior to filing suit. A plaintiff alleging a medical malpractice claim must prove by a preponderance of the evidence the following:

    (a)    the recognized and generally accepted standards, practices, and procedure in the community which would be exercised by competent physicians in the same specialty under the same circumstances;

    (b)    that the physician or medical personnel negligently deviated from the generally accepted standards, practices, and procedures;

>    (c)   that such negligent deviation from the generally accepted standards, practices, and procedures was a proximate cause of the plaintiff's injury; and
>
>    (d)   that the plaintiff was injured.

Dumont v. United States, 80 F.Supp.2d 576, 581 (D.S.C.2000) (internal citations omitted). Furthermore, the plaintiff must establish by expert testimony both the "standard of care and the defendant's failure to conform to the required standard, unless the subject matter is of common knowledge or experience so that no special learning is needed to evaluate the defendant's conduct." Martasin v. Hilton Head Health Sys. L.P., 364 S.C. 430, 613 S.E.2d 795, 799 (2005) (citation omitted). In South Carolina, the burden of proof in a medical malpractice case is entirely on the plaintiff. Dumont, 80 F.Supp.2d at 581. In this case, Plaintiff has failed to create a genuine issue of fact to survive summary judgment. Therefore, it is recommended that any claims for medical malpractice be dismissed and summary judgment granted in favor of the Defendants.

Defendants argue that since the CRCC is a private healthcare detention facility operated by GEO and GEO contracts to provide detention healthcare, nursing care, some physician care and security services at CRCC for numerous government agencies, including the Georgia Department of Corrections, they cannot be said to have acted under color of state law as required by 42 U.S.C. § 1983. However, based on authority to the contrary, the motion on this basis should be denied. See, e.g., West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (holding that private physicians that contracted with the state to provide medical care to prisoners were state actors because they were hired to fulfill an obligation—providing medical care—which was traditionally fulfilled by the state); Millmine v. County of Lexington, C/A No. 3:09–1644–CMC, 2010 WL 412605 (D.S.C. Jan.28, 2010) (unpublished) (considering whether Prison Health Services, an

independent health contractor with a detention center, acted under the color of state law and declining to dismiss it as a defendant in light of the absence of clear precedent on this issue and the Fourth Circuit authority holding that private physicians who treat prison inmates may be held liable under § 1983); Mavins v. McFadden, 2009 WL 4906573, *5 (D.S.C. Dec.18, 2008) (unpublished) (rejecting the argument that actions by employees of Correct Care were not taken "under color of state law" as required by § 1983); Robinson v. Green, 2007 WL 1447871 (D.S.C. May 11, 2007) (unpublished) (rejecting the argument that the medical defendants were not state actors because they were employed by Prison Health Services, an independent health contractor with a detention center).

## C. RISK OF HARM

In her complaint, Plaintiff has alleged that she was attacked by other inmates on January 4, 2010, and December 30, 2010. Plaintiff alleges that:

> I was helping another patient on the phone when Lucretia Felder came up from behind me and punched me in the back of my head. When I turned around, she continued to punch me with her fists. She then pushed me on the floor and got on top of me and continued to punch me, along with bite me and scratch me. She had threatened me several times before this occurred and officers, along with Captain Cummings, were all made aware of the problem. Yet, nothing was done about it. I even requested protective custody, but was denied it. I also was not the only one that was threatened by her, yet she was still able to be around anyone she wanted and was able to threaten whoever she wanted. I had requested to press charges against her, but I was told by Captain Richardson that I could not, because Lucretia (one that attacked Plaintiff) was severe mental health and was not liable for her actions.

> On 12-30-10, at approx. 6:10 p.m. Emerald Miller and Brandi Thompson came in my room and attacked me while I was sitting on my bed. When I stood up, Brandi pushed me on my back onto my bed. Emerald and Brandi both repeatedly punched me in my right eye and scratched me. Right before they both came in my room and

14

> attacked me, they went into another patients room and assaulted her. Therefore, they both should have been locked in their rooms from this previous attack, but they were not. Ofcs. Peterson and Whitaker along with the nurse Erica Brown were working on this night and heard both parties repeatedly walk pass me and threaten me. However, no-one said, or did anything to either patient. Even after the Sgt. and Ofcs. walked in my room while I was being assaulted, both Emerald and Brandi continued to assault me.

(Complaint, p. 3-4).

Defendants have not specifically addressed this issue in their motion for summary judgment.[4] Accordingly, it is recommended that summary judgment be denied without prejudice with relation to the claim of failure to protect from a risk of harm.[5]

---

[4] If the district judge adopts this report and recommendation, it is recommended that the Defendants be given twenty (20) days to file a dispositive motion on this issue.

[5] The Supreme Court recognized that punishment prohibited by the Constitution does not result from negligence on the part of prison officials. The Supreme Court stated this principle and established the appropriate standard in Whitley v. Albers, 475 U.S. 312 (1986).

> [t]o be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interest or safety.
> . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the
>
> Cruel and Unusual Punishments Clause. . . . Id., at 1084.

Based on these precedents the issue is whether an inmate who has suffered injury has alleged and offered evidence that the prison officials "wantonly and obdurately failed to take precautions for his safety in deliberate indifference to a specific known risk of harm. . . ." Ruefly v. Landon, 825 F.2d 792 (4th Cir. 1987). The Supreme Court has recently defined "deliberate indifference" in the context of the liability of physical injury to an inmate. In analyzing case law, the court concluded that deliberate indifference must be something more than mere negligence, but less purposeful or knowing conduct. The court held: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825 (1994).

The Supreme Court defined "deliberate indifference" in the Eighth Amendment context in Farmer v. Brennan, 511 U.S. 825 (1994). The court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the

15

### III.  CONCLUSION

As set out above, it is recommended that the allegations of medical indifference, forced medication, and negligence and/or medical malpractice be granted. As to the allegations of risk of harm, it is recommended that summary judgment be denied without prejudice.

It is therefore, for the reasons stated herein,

RECOMMENDED that the motion filed by Defendants (document #79) for summary judgment be GRANTED IN PART AND DENIED IN PART.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

January 10, 2013
Florence, South Carolina

The parties' attention is directed to the important notice on the next page.

---

<u>official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference</u>.  (Emphasis added).  This approach comports best with the text of the Amendment as our cases have interpreted it.  The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments."  An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation.  The common law reflects such concern when it imposes tort liability on a purely objective basis. [Citations omitted].  But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

<u>Id.</u> at 837-38.

The obduracy and wantonness standard applies to prison officials in supervisory positions as well as to guards and corrections officers who deal with inmates directly.  Thus, a supervisor must know of a specific risk or be aware of a pervasive risk of harm and act "wantonly, obdurately, or with deliberate indifference to that specific or pervasive risk of harm."  <u>Moore v. Winebrenner</u>, 927 F.2d 1312 (4th Cir.), <u>cert. denied</u>, 502 U.S. 828 (1991).