UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Candy Argot, | ) C/A No. 4:11-2755-RMG-TER |
| Plaintiff, | ) |
| vs. | ) REPORT AND |
| Dr. Oliver Harden; Dana Smith; Columbia Regional Care Center, a prison hospital owned by Geo Care, Inc.; Chief Bruce McClease; Steve Adwell; Major Cummings; Captain Alton Richardson; Officer Peterson; Ofc. Whitaker; Erica Brown, Nurse; Sgt. Carlos Glenn; Ofc. Whitman; Ofc. Adam Creewell; Catherine Adumoah, Nurse; Ofc. Rosin; Nurse Mills; Rochelle Priester, Nurse; Joy NLN, Nurse; Tangela NLN, Nurse; Leroy NLN, Nurse; Kya Davis, Nurse, | ) RECOMMENDATION |
| Defendants. | ) |

## I. PROCEDURAL BACKGROUND

The Plaintiff, Candy Argot, proceeding *pro se*, filed this action under 42 U.S.C. § 1983[1] on October 12, 2011. Plaintiff was a prisoner in the custody of the Georgia Department of Corrections and housed at the Columbia Regional Care Center in Columbia (CRCC), South Carolina, at all times relevant to the allegations in the complaint.[2] By Order of February 20, 2013, Defendant's motion for summary judgment was granted as to Defendants on Plaintiff's claims of medical indifference, forced medication, negligence, and medical malpractice, but denied as to Plaintiff's claim alleging

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

[2] Plaintiff filed a change of address with the court on May 20, 2013. (Doc. #122).

deliberate indifference to the risk of harm posed by other CRCC's patients without prejudice. Defendants were given twenty (20) days to file a dispositive motion on this issue. (Doc. #109).

On March 12, 2013, Defendants filed a motion for summary judgment. (Doc. #113). Because Plaintiff is proceeding *pro se*, she was advised on or about March 13, 2013, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the Defendants' motion for summary judgment could result in dismissal of her complaint. The Plaintiff filed a response in opposition on April 4, 2013. (Doc.#117). Defendants filed a reply. (Doc. #121).

## II. DISCUSSION

### A. STANDARD FOR SUMMARY JUDGMENT

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317.

Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with . . . affidavits, if any." Id. at 322; see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## B. ARGUMENT OF PARTIES

In her complaint, Plaintiff alleges as follows:

> I was helping another patient on the phone when Lucretia Felder

> came up from behind me and punched me in the back of my head. When I turned around, she continued to punch me with her fists. She then pushed me on the floor and got on top of me and continued to punch me, along with bite me and scratch me. She had threatened me several times before this occurred and officers, along with Captain Cummings, were all made aware of the problem. Yet, nothing was done about it. I even requested protective custody, but was denied it. I also was not the only one that was threatened by her, yet she was still able to be around anyone she wanted and was able to threaten whoever she wanted. I had requested to press charges against her, but I was told by Captain Richardson that I could not, because Lucretia (one that attacked Plaintiff) was severe mental health and was not liable for her actions.
>
> On 12-30-10, at approx. 6:10 p.m. Emerald Miller and Brandi Thompson came in my room and attacked me while I was sitting on my bed. When I stood up, Brandi pushed me on my back onto my bed. Emerald and Brandi both repeatedly punched me in my right eye and scratched me. Right before they both came in my room and attacked me, they went into another patients room and assaulted her. Therefore, they both should have been locked in their rooms from this previous attack, but they were not. Ofcs. Peterson and Whitaker along with the nurse Erica Brown were working on this night and heard both parties repeatedly walk pass me and threaten me. However, no-one said, or did anything to either patient. Even after the Sgt. and Ofcs. walked in my room while I was being assaulted, both Emerald and Brandi continued to assault me.

(Complaint, p. 3-4).

Therefore, in alleging a "risk of harm" claim, Plaintiff asserts that Defendants were deliberately indifferent to the risk of harm she faced from other inmates in CRCC's psychiatric ward. (Id.). Plaintiff alleges that, though she told Defendant Captain Cumming and "officers" that a fellow inmate had threatened her several times, and she had specifically requested protection from that inmate, nothing was done. ( Id.). She also alleges that, in a separate and subsequent incident, two inmates first attacked a third inmate before proceeding to Plaintiff's room and attacking her. ( Id.). According to Plaintiff, Defendants Peterson, Whitaker, and Brown heard the responsible parties

threaten Plaintiff prior to the attack, and Peterson and Whitaker stood in Plaintiff's room while she was being assaulted, but they failed to act. ( Id.).

Defendants argue they are entitled to summary judgment with respect to the January 4, 2010, and December 30, 2010, incidents. In support of their motion, Defendants submitted the affidavit of David Cummings (Cummings) who attests that he is an employee of GEO Care of South Carolina and is the Major at the CRCC. Cummings was Captain on January 4, 2010, and December 30, 2010, and is familiar with the Plaintiff through his position. (Doc. #113-2). Regarding the January 4, 2010, incident, Cummings avers that he had no knowledge that Plaintiff had been threatened by the other patient she identifies in her complaint prior to the incident occurring. Id. No CRCC security staff members were aware of any threats made by the other patients towards Plaintiff prior to the incident. Id. No one, including Plaintiff reported any of the threats alleged to Cummings in his supervisory role as captain. Id. As to Plaintiff's allegation that her request to be placed in protective custody after the January 4, 2010, incident was denied, Cummings attests that he did not have authority as Captain to grant or deny any requests for protective custody made by any patient at CRCC. Id. Regardless, Plaintiff never made such request to Cummings. Id. Cummings attests that he never advised Plaintiff that she could not press charges against the other patient as a result of the January 4, 2010, incident and does not know if she proceeded with such as this would have been outside of his role as Captain. Id. Cummings asserts that he had no knowledge of the alleged December 30, 2010, incident and no knowledge of the other patients identified in the complaint assaulting patients "right before" they allegedly assaulted Plaintiff. Id. To Cummings' knowledge, no CRCC security staff members were aware of these other patients assaulting another patient "right before" they allegedly assaulted Plaintiff. Id. No one, including Plaintiff, ever reported an assault by these patients to him

5

in his supervisory role as Captain. Id. Cummings was not aware of a specific risk of harm to Plaintiff on January 4, 2010, or December 30, 2010, and he acted in good faith towards Plaintiff at all times during her detention at CRCC. Id.

Defendants submitted the supplemental affidavit of Bruce McClease (McClease) who attests in his previous affidavit that he is an employee with GEO Care of South Carolina and was a Major at CRCC on January 4, 2010, and was the Chief of Security on December 30, 2010. (McClease affidavit). McClease had no knowledge regarding the January 4, 2010, incident and no knowledge that Plaintiff had been threatened by the other patient she identifies in her complaint prior to the incident occurring. Id. No one, including Plaintiff, ever reported any of the threats alleged in the complaint to McClease in his supervisory role as Major. As to Plaintiff's allegations that she requested to be placed in protective custody after the January 4, 2010, incident was denied, McClease did not have the authority to grant or deny any requests and, based on a review of Plaintiff's records, there is no indication or reason that she should have been placed in protective custody before or after the January 4, 2010, incident. Id. As to the December 30, 2010, incident, McClease has no knowledge of other patients identified in the Complaint as assaulting other patients right before they allegedly assaulted Plaintiff and to his knowledge, no CRCC security staff members were aware of these other patients assaulting another patient "right before" they allegedly assaulted Plaintiff. Id. No one, including Plaintiff ever reported an assault by these other patients of another patient "right before" they allegedly assaulted Plaintiff to McClease in his supervisory role as Chief of Security. Id. McClease attests that he was not aware of any specific risk of harm to Plaintiff on January 4, 2010, or December 30, 2010. Id. Care Officers working on the Unit should not separate or lock down patients unless there is a specific threat of harm or an actual altercation.

Arguing back and forth amongst patients on a Unit is not a sufficient reason for patients to be separated or locked down. Id. After reviewing the conduct of the CRCC security personnel relating to the January 4, 2010, and December 30, 2010, incidents, it is McClease's opinion that all security services relevant to those incidents were appropriate. Id. Any incidents involving Plaintiff during her time at CRCC have been responded to and handled appropriately and McClease has not taken any actions at any time to cause any harm to Plaintiff consistent with the allegations in the Complaint. Id.

Defendants submitted the affidavit of Alton Richardson who attests that he is an employee of GEO Care of South Carolina and Captain at the CRCC. (Richardson affidavit, doc. # 113-3). Richardson's job is to support managers for safety and perform a key control coordinator and investigate at CRCC. Id. Richardson does not "walk the halls" and had little to no individual interaction contact with the patients. Id. Regarding the January 4, 2010, incident, Richardson had no knowledge that Plaintiff had been threatened by the other patient she identifies in her Complaint prior to the incident occurring. Id. To his knowledge, no CRCC security staff members were aware of any threats made by the other patient towards Plaintiff prior to this incident. Id. No one, including Plaintiff, reported any of the threats alleged in the Complaint to Richardson in his supervisory role as Captain. Id. As Captain, Richardson did not have the authority to grant or deny any requests for protective custody made by any patient at CRCC, including Plaintiff. Richardson never advised Plaintiff that she could not press charges against the other patient as a result of the January 4, 2010, incident. Id. The "Patient Grievance Form" for the January 4, 2010,incident which Plaintiff attached to her Complaint as an Exhibit, indicates that Richardson responded to the grievance and that Plaintiff agreed with her proposed resolution. Id. Richardson does not know if Plaintiff proceeded

7

with a formal request for protective custody or pressing charges against the other patient as that is outside his role and authority as Captain. Id. Richardson has no knowledge of the alleged December 30, 2010, incident which allegedly occurred at 6:10 p.m. because Richardson worked from 7 a.m. to 4 p.m. and was not in the building at the time. Id. Further, regarding the December 30, 2010, incident, Richardson has no knowledge of the other patients identified in the Complaint assaulting other patients "right before" they allegedly assaulted Plaintiff. Id. To his knowledge, no CRCC security staff members were aware of these other patients assaulting another patient "right before" they allegedly assaulted Plaintiff. Id. No one, including Plaintiff, ever reported an assault by these other patients of another patient "right before" they allegedly assaulted Plaintiff to him in his supervisory role as Captain. Id. Richardson had no knowledge that these other patients identified in the complaint threatened Plaintiff on December 30, 2010, before allegedly assaulting her. Id. Richardson attests that he was not aware of any specific risk of harm to Plaintiff on January 4, 2010, or December 30, 2010, and has never taken any actions at any time to cause any harm to Plaintiff consistent with the allegations in the Complaint. Id.

Defendants submitted the affidavit of Carlos Glenn who attests he is employed with Geo Care of South Carolina and is Sergeant at the CRCC. (Glenn affidavit, doc. # 113-5). Glenn asserts Plaintiff can be manipulative of the staff and other patients. Id. As Sergeant, Glenn supervises security services at CRCC during his shift and was not posted to Plaintiff's Unit, because he was working all over the facility supervising security services. Id. Glenn has no knowledge of the alleged January 4, 2010, incident and no knowledge that Plaintiff had been threatened by the other patient she identifies in her complaint prior to the incident occurring. Id. As Sergeant, Glenn had no authority to grant or deny any requests for protective custody made by an patients at CRCC,

including Plaintiff, but regardless, Plaintiff never made a request to be placed in protective custody to him. Id. Glenn never advised Plaintiff that she could not press charges against the other patient as a result of the January 4, 2010, incident and does not know if Plaintiff proceeded with a formal request for protective custody or pressing charges against the other patient relating to the January 4, 2010, incident as that would have been outside of his role and authority as Sergeant. Id. Glenn became aware of an incident involving Plaintiff on December 30, 2010, when he responded to a call for assistance. Glenn helped to separate Plaintiff and the two other patients identified in the Complaint. Id. The situation was immediately under control, so Glenn left the scene and continued with his duties around the facility. Id. Glenn has no knowledge of the other patients identified in the Complaint assaulting other patients "right before" they allegedly assaulted Plaintiff and no one reported an assault by these other patients of another patient "right before" they allegedly assaulted Plaintiff to him in his supervisory role as Sergeant. Id.

Defendants submitted the affidavit of Dequion Whitaker who attests that he was an employee of GEO Care of South Carolina and is currently a security officer employed by the South Carolina Department of Mental Health. (Whitaker affidavit, doc. #113-6). Whitaker was a Care Officer at the CRCC where he made rounds to make sure patients were safe and secure. As a Care Officer, he had no control over where patients were housed at CRCC. Id. Whitaker attests that he was not present at the facility on the alleged incident of January 4, 2010, and has no knowledge of it. Id. Whitaker was working when the alleged incident between Plaintiff and two other patients occurred on December 30, 2010. Id. The female patients on the unit had been arguing and going back and forth with each other which is not unusual because the patients on that unit had mental health issues, but he did not hear any threats made. Id. The CRCC policies and procedures did not allow Care officers

to lock patients in their rooms, or confine then in any way, simply because there had been some arguing and back and forth between patients. Id. Another patient on the unit attempted to flood her room and Whitaker and other care officers had responded to that when the alleged incident between Plaintiff and two other patients occurred. Id. Whitaker did not witness the incident, but heard a noise coming from Plaintiff's room and responded immediately. Id. The patients involved in the incident were separated and sent back to their rooms. Id. They were locked in their rooms at that point, because that was the facility's policy and procedure after the incidence between patients. Id. There was no reason to lock any of the patients on that unit in their rooms before the incident between Plaintiff and the two other patients identified in the Complaint. Id. Whitaker was not aware of any specific risk of harm to Plaintiff on December 30, 2010, prior to the incident between her and the two other patients identified in the Complaint. Id. Whitaker was not aware of any specific risk of harm to Plaintiff on December 30, 2010, prior to the incident between her and the two other patients identified in the Complaint and had no knowledge of the two other patients identified in the Complaint assaulting other patients "right before" they allegedly assaulted Plaintiff. Id. No one reported any of the alleged threats in the complaint to Whitaker and he never took any actions at any time to cause any harm to the Plaintiff consistent with the allegations in the Complaint. Id. He was never deliberately indifferent to any of the Plaintiff's safety and security needs at CRCC, including the alleged risk of harm on January 4, 2010, and December 30, 2010. (See also affidavit of Gina Petersen, doc. # 113-8). Id.

Defendants submitted the affidavit of Erika M. T. Brown, LPN, who attests that she is an employee of GEO Care of South Carolina and is a practical nurse at the CRCC having worked there since 2002. (Brown affidavit, doc. #113-7). Her duties include administering medications to patients,

documenting care and treatment rendered and sometimes acting as a charge nurse. Id. Plaintiff is a diabetic and non-compliant with her medications. Id. She is sometimes belligerent with the staff and is often manipulative of other patients. Id. Brown has no knowledge of the alleged January 4, 2010, incident or that Plaintiff had been threatened by the other patient she identifies in her complaint prior to the incident occurring. Id. As an LPN, Brown has no authority to grant or deny any requests for protective custody made by any patients at CRCC, including Plaintiff as alleged. Id. Plaintiff never told Brown that she wanted to press charges against the other patient and she never advised Plaintiff that she could not press charges against the other patient as a result of the alleged January 4, 2010, incident. Id. As to the alleged incident of December 30, 2010, Brown was working on Unit 4 at the other end when she heard a noise coming from Plaintiff's room at which time she immediately responded. Id. When Brown arrived at Plaintiff's room, two security officers had separated Plaintiff and two other patients, but she had no further involvement with any of these patients regarding the incident. Id. Brown attests that she has no knowledge of the other patients identified in Plaintiff complaint assaulting other patients "right before" they allegedly assaulted Plaintiff. Id. Brown has not knowledge that these other patients identified in the Complaint threatened Plaintiff on December 30, 2010, before allegedly assaulting Plaintiff. Brown attests that she was not aware of any specific risk of harm to Plaintiff on January 4, 2010, or December 30, 2010, and has never been deliberately indifferent to any of Plaintiff's medical, safety and security needs at CRCC, including the alleged risk of harm on January 4, 2010, and December 30, 2010. Id.

## C. ANALYSIS

The Eighth Amendment imposes a duty on prison officials "to protect prisoners from

violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). However, "[n]ot every injury suffered by a prisoner at the hands of another establishes liability against a prison official...." Brown v. N.C. Dep't of Corrs., 612 F.3d 720, 723 (4th Cir.2010). The Fourth Circuit stated in Bacchus v. Scarborough as follows:

> To establish a claim for failure to protect, an inmate must show: (1) "serious or significant physical or emotional injury," and (2) that prison officials exhibited deliberate indifference to inmate health or safety. De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir.2003) (internal quotation marks omitted). To be deliberately indifferent, a prison official must "know of and disregard an objectively serious ... risk of harm." Id. A showing of mere negligence does not qualify as deliberate indifference. Davidson v. Cannon, 474 U.S. 344, 347, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); Grayson v. Peed, 195 F.3d 692, 695 (4th Cir.1999).

466 Fed. Appx. 269, 271 (4th Cir.2012). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." Farmer, 511 U.S. at 837.

Here, Plaintiff has failed to established that she suffered a serious physical injury at the hands of the other patients named in her complaint, she has failed to show that the Defendants had actual knowledge that the patients named posed a substantial risk of harm to the Plaintiff, and that they disregarded that risk.[3] See Baze v. Rees, 553 U.S. 35, 128 S.Ct. 1520, 170 L.Ed.2d 420, (2008)

---

[3] If Plaintiff is attempting to hold any of the Defendants liable for the actions of their employees, the claim fails. Under the doctrine of respondeat superior, an employer or supervisor is not liable for the acts of their employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978) and Fisher v. Washington Metro Area Transit Authority, 690 F. 2d 1133, 1142-43 (4th Cir. 1982).

(noting that the Eighth Amendment protects against a risk of future harm that is " 'sure or very likely to cause serious illness and needless suffering' ") (*quoting* Helling v. McKinney, 509 U.S. 25, 33, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993)). Plaintiff has failed to make a showing that the Defendants wantonly and obdurately failed to take precautions for her safety or showed deliberate indifference to a specific known risk of harm, that any official was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that they also drew the inference. Farmer, supra; Rich v. Bruce, 129 F.3d 336 (4th Cir.1997) ("A defendant is not subjectively reckless where, although he is aware of the existence of a general risk, he is unaware that his conduct is inappropriate in light of that risk. True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). Based on the evidence before this court, there is not sufficient evidence to create a genuine issue of material fact that the Defendants were deliberately indifferent to Plaintiff's risk of harm. [4]

### D. QUALIFIED IMMUNITY

Defendants argue that they are all entitled to qualified immunity. Defendants assert Plaintiff cannot establish that any Defendant violated a constitutional right.

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity.

---

[4] Assuming Defendants' actions were indicative of negligence, a showing of mere negligence will not meet the deliberate indifference standard. Grayson v. Peed, 195 F.3d 692, 695 (4th Cir.1999). Neither the Fourteenth Amendment Due Process Clause, Davidson v. Cannon, 474 U.S. 344, 347, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986), nor Eighth Amendment, Moore v. Winebrenner, 927 F.2d 1312, 1316 (4th Cir.1991) is violated by negligent failure to protect inmates from violence.

That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the Plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." Wilson v. Layne, 526 U.S. 603, 609 (1999); *see also* Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." Wilson, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." Porterfield v. Lott, 156 F.3d 563, 567 (4th Cir. 1998).

In Maciariello v. Sumner, 973 F. 2d 295 (4th Cir. 1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity when it set forth that:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

Maciariello, 973 F. 2d 295, 298 (4th Cir. 1992) (Citations omitted).

For a Plaintiff to recover, he must show the Defendants (i) violated a particular right clearly established in law, and (ii) the application of that right to the actions of the official must be apparent or that defendants were deliberately indifferent to a known risk of harm or serious medical need. The Plaintiff in this case has not done so. As stated above, Plaintiff fails to present evidence of deliberate indifference. Thus, he fails to show a violation of a constitutional right. Even assuming for the sake of argument there was deliberate indifference shown, clearly no official transgressed bright lines based on the facts presented. Therefore, the undersigned recommends that the motion for summary judgment filed by the Defendants be granted on the basis of qualified immunity.

### E. INJUNCTIVE RELIEF

Since Plaintiff is no longer incarcerated at the CRCC, to the extent she has requested injunctive relief, her claims are moot. Plaintiff provided the court with a change of address to 137 Unity Lane, P.O. Box 381, Pocono Lake, PA. 18347. Claims for injunctive and declaratory relief become moot when a prisoner is no longer subjected to the condition complained of. Williams v. Griffin, 952 F.2d 820, 825 (4th Cir. 1991); Ross v. Reed, 719 F.2d 689, 693 (4th Cir. 1983).

### F. PENDENT JURISDICTION

Assuming Plaintiff's § 1983 claim is dismissed by this Court and Plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims

if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

### III.  CONCLUSION

Based on the above reasoning, Plaintiff has failed to show that Defendants violated any of her constitutional or statutory rights under 42 U.S.C. § 1983.  It is therefore, for the reasons stated herein,

RECOMMENDED that the motion filed by Defendants (doc. #113) for summary judgment be GRANTED IN ITS ENTIRETY.

IT IS FURTHER RECOMMENDED that any other outstanding motions be deemed MOOT.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

October 31, 2013
Florence, South Carolina

**The parties' attention is directed to the important information on the attached notice.**